## UNITED STATES v. CENTRAL SUPPLY ASS'N et al.

### No. 16750.

District Court, N. D. Ohio, E. D.

Jan. 22, 1941.

See, also, 34 F.Supp. 241.

Edward P. Hodges, Kenneth L. Kimble, Alfred Karsted, W. Wallace Kirkpatrick, and Richard K. Decker, Sp. Assts. to Atty. Gen., all of Washington, D. C., David J. Clarke, Sp. Asst. to Atty. Gen., of Chicago, Ill., and Alexander C. Cushing, Sp. Asst. to Atty. Gen., of New York City, Thurman Arnold, Asst. Atty. Gen., and Emerich B. Freed, U. S. Atty., of Cleveland, Ohio, for plaintiff.

Jas. G. Moore, of New York City, and Carl F. Shuler, of Cleveland, Ohio, for defendants Jobbers Credit Ass'n, Inc., Behrer Nason Co., Inc., Arnold M. Behrer, and Glenn B. Van Buren.

Jas. C. Connell, of Cleveland, Ohio, for defendants United Ass'n of Journeymen Plumbers and Steamfitters of the U. S. and Canada, Local Union Nos. 94, 130, 55, 98, 640, 519, 118, and 172, Plumbing & Heating Warehousemen's Auxiliary to the Journeymen Plumbers Union, Local Union No. 55, and William Butler.

Jas. C. Connell, of Cleveland, Ohio, and Flynn, Storms & Greenquist, of Racine, Wis., for defendants Howard Enold and Wilbur Gregory.

Jas. C. Connell, of Cleveland, Ohio, for defendants C. J. Maher, George Masterson, Arthur S. Pettit, Sam Poole, William E. Quirk, D. M. Stribling, and Edwin Turnock.

WILKIN, District Judge.

Twenty-five defendants filed pleas in abatement. Some of such defendants based their pleas upon identical grounds. Others varied the assignment of reasons for their pleas. The basic reasons assigned by the pleas may be divided into four classes:

1. That the term of court at which the grand jury was impanelled had expired before the return of the indictment and that the grand jury was therefore without authority and the indictment a nullity.

2. (a) That the indictment names 115 co-conspirators whom it failed to indict, and is therefore a violation of the Fifth Amendment to the Constitution, in that it thereby discloses that those charged were indicted because of "envy, hatred, or malice", or that the co-conspirators not charged were "unpresented for fear, favor or affection, reward or hope of reward".

(b) Some of the pleas take exception to this condition by saying that because a number of the conspirators are named but not indicted, the indictment fails to state facts sufficient to constitute a crime against the defendants.

3. That unauthorized persons were present during the deliberations and thereby destroyed the secrecy and sanctity of the grand jury, making the indictment void.

This charge is based upon

(a) The allegations that the Special Assistants to the Attorney General did not file their commissions with the clerk of court as required by law and the rules of this court; and

(b) The allegation that more assistants appeared before the grand jury than the law allows.

(4) That the grand jury was improperly influenced by the Special Assistants—

(a) By their excessive number and because they "urged and counselled the jury";

(b) By performing services "other than conducting proceedings".

While the court recognizes that the briefs in support of the various pleas present different arguments and show a marked difference of attitude toward the problem presented by the indictment, still it seems to the court that the reasons for its rulings on the motions to strike can be adequately stated under the four headings above, without making special reference to the separate pleas and briefs.

1. The grand jury which returned the indictment was impanelled for the October term of this court at Cleveland. That term continued until the February term at Cleveland. Before the close of the October term the grand jury was by special order, 28 U.S.C.A. § 421, "authorized to continue to sit during the February, 1940, term of this court" at Cleveland and the February term continued until the beginning of the April term. The fact that the law requires a term of this court at Youngstown in March does

not affect the terms of court held at Cleveland. · The practice has been—"for a time whereof the memory of man runneth not to the contrary"—to continue one term of court at a given place until the beginning of the next term. There is no "closed season" of court at Cleveland. The business of the court requires a continuation of the term *there* until the next term begins *there*. The life of the grand jury did not terminate at the beginning of the March term at Youngstown, and the jury was a duly authorized and existing grand jury at the time it returned the indictment.

■ 2. (a) The indictment returned is not vitiated by the failure to indict other conspirators named therein. One indicted will not be discharged because the grand jury failed to indict another who might have been indicted. The failure of the grand jury to make all the conspirators defendants does not justify the inference that some were indicted for envy, hatred, or malice, or that others were not indicted for fear, favor, or affection. The law is settled that the grand jury "for reasons known only to the grand jurors" may name or not name all the conspirators and may indict or not indict all those named. Circumstances can easily be imagined which would justify the naming of some conspirators as a part of the description of the crime, even though the evidence was not sufficient to warrant an indictment against such conspirators.

■ (b) It cannot be concluded that the indictment fails to state a cause of action against those indicted merely because some conspirators are named but not indicted. United States v. Vannatta, D.C., 278 F. 559; Katz v. United States, 1 Cir., 273 F. 157, 159, certiorari denied, 257 U.S. 641, 42 S.Ct. 52, 66 L.Ed. 412; Didenti v. United States, 9 Cir., 44 F.2d 537; Fox v. United States, 7 Cir., 45 F.2d 364; People v. Link, 365 Ill. 266, 280, 6 N.E.2d 201, affirming 282 Ill.App. 520.

■ 3. (a) The Special Assistants to the Attorney General did those things which the law requires in order to qualify them for appearance before the grand jury. 5 U.S. C.A. §§ 310, 315. If the opinion in the Huston case, United States v. Huston, D. C., 28 F.2d 451, June 26, 1928, ever had the effect of a rule of court, it was subsequently superseded by the enactment of Sec. 315 (amended 1930), and by the promulgation of the rules of this court subsequent to the decision in the Huston case. Revised Rules of The United States District Court for the Northern District of Ohio, effective February 1, 1929. The Special Assistants received commissions required by Section 315, exhibited them to the clerk, and took the oath required by such section. Such oaths were filed and refer to the commissions, but the commissions were not filed. If there is any reason for filing them (and we must admit that the question raised seems to indicate that there is), then the court should order that the commissions be filed. But the failure to file them under the circumstances does not affect the validity of the indictment.

■ (b) The court finds nothing in the terminology of Sections 310 and 315 which in itself would warrant a finding that the number of Special Assistants exceeded the law. There is nothing in this section that would require the Attorney General to confine his services for the entire session of a grand jury to the work of one Assistant. Different Assistants might conduct proceedings on different days or for different matters. As counsel for some of the defendants say, "the allowable number of such special representatives of the executive powers should naturally depend upon the difficulty and complexity of the matters under investigation". The number of counsel appearing for defendants would indicate that the number of counsel for plaintiff might well be more than required for the usual case. Whether or not there were more Special Assistants than the case required and whether or not the purpose and effect of such appointments was "other than conducting proceedings", are questions to be discussed under 4. But in this connection the court finds that there is nothing in the law itself that would justify a finding that the Special Assistants were greater in number than the law permits and therefore unauthorized.

The foregoing three grounds for abatement can be disposed of by a consideration of the undisputed facts and the law. The court therefore has considered the motions to strike as demurrers to the pleas and sustains them as to all three grounds discussed above.

■ 4. Coming now to a consideration of the fourth reason, the court finds that the allegations raise an issue of fact. One group of defendants say in their plea in abatement that "by the appearance of said Special Assistants before the grand jury

during its secret sessions for purposes other than conducting proceedings * * *

"These defendants and each of them were materially prejudiced * * * in that the secrecy and sanctity of the grand jury proceedings were violated while said Jury was sitting, the independence of the Grand Jury was invaded, the general practice and the rules of this court were disregarded."

The plea of another group of defendants recites that "The said grand jury was attended by an undue array of representatives of the executive branch of the government, more than seven in number, * * * all in addition to the duly appointed United States Attorney of the Northern District of Ohio and his assistants and staff, by reason whereof the said indictment is not the free and uninfluenced act of the said grand jury * * *. That the several members of the grand jury making said presentment were improperly influenced by the special representatives aforesaid of the executive branch of the government and by the District Attorney and his staff, in that they appeared before said grand jury and urged and counselled its members to vote and return said indictment against only the 102 defendants named therein and to fail and refuse to indict the 115 individuals named as co-conspirators", etc.

Another group of defendants allege in their plea that "the part which they (Special Assistants to the Attorney General) in fact took in connection with said grand jury did not constitute a conducting of the grand jury proceedings".

Some of the pleas in abatement are sworn to by the defendants filing them. Other pleas are supported by separate affidavits. Such charges so supported cannot be disposed of on demurrer or motion to strike. The charges in the pleas here are more specific and direct than they were in the case of United States v. American Medical Association et al., D.C., 26 F.Supp. 429, cited by counsel for the plaintiff. The court cannot dispose of such charges upon motions or pleadings which by law assume the truth of the allegations. The motions to strike the pleas in abatement based upon the fourth reason are therefore overruled.

Proceeding to a consideration of the pleas in abatement themselves, the court cannot sustain them because they are not sufficiently supported by evidence. The verifications and the affidavits are not definite and specific enough to support the broad charges in the pleas.

Furthermore, the verifications and affidavits are related to charges discussed under 1, 2, and 3, above. The court cannot be certain that the verifications and affidavits would now be made by defendants in view of the rulings of the court upon the first, second, and third grounds. One of the pleas states specifically: "All these defendants stand ready to verify by competent proof all the foregoing statements which are based on an examination of the indictment, of the records on file in the office of said clerk, and of certified copies of some of said special commissions as set forth in the attached affidavit".

Other affidavits state that the pleas are based upon "matter of record". Verifications that do not refer to the record state that they are based "upon information and belief". Sufficient has been said to indicate that the court would not sustain the fourth ground of the pleas upon what is disclosed by the record. The court feels, therefore, that the defendants should be given an opportunity to reaffirm and supplement the affidavits in support of their pleas based upon the fourth ground, or, in the alternative, to withdraw such pleas.

The language used in the pleas is broad enough to cover misconduct not shown by the record. If it is the intent of the defendants to make such a charge, they should support it by some definite and specific testimony. As stated by this court in its former opinion in this case, 34 F. Supp. 241, 244 (August 22, 1940), "Persons accused have a right to insist that the grand jury which indicted them should have been duly impanelled and conducted according to law". If the law has been violated by the grand jury in returning the indictment, the defendants should not and will not be required to answer its charges. But, as also stated in that former opinion, the secrecy of grand jury proceedings is so protected by the court that charges of improper conduct will be investigated "only where by proper verified pleading a clear and positive showing is made of gross and prejudicial irregularity influencing the grand jury in returning an indictment."

The jurors were charged by this court that the grand jury acts as an independent arm of the court, largely on its own judgment and initiative; that its judgment and acts are not to be controlled by the court

or its officers. It was told that the United States District Attorney and assistant counsel would appear and present charges which the United States might want to have considered. They were informed that such counsel would advise them as to the law and would subpoena and examine witnesses, but the jury was specifically cautioned that such counsel were not allowed to be present when the jury deliberated upon the evidence which they had heard or when they voted on the matter of returning an indictment. The jurors were cautioned that in order to justify an indictment they should believe from the evidence that it was reasonably probable that a violation of the laws of the United States had been committed, and they were informed that it was a very serious offense for any one to attempt to influence their action or decision upon any matter pending before them; and that the law secured them absolutely from intimidation or personal influence of every kind.

This court of course presumes that its instructions and admonitions were observed. The court does not assume, because there were more counsel for the government in this investigation than in the ordinary case, that counsel abused their privileges by appearing in greater number than was necessary, or by being present during the deliberations or voting of the grand jurors, or that they exercised any undue or improper influence. If the defendants or their counsel, or if any of the grand jurors, counsel for the government, or other offices of this court, know of any facts which indicate a violation of the law or the instructions of this court by the grand jury, it is their duty to inform the court. The court wishes to be secure in the feeling that no defendant will be held to answer an unlawful indictment. And the defendants have a right to share such feeling. But they, as well as the court itself, should have good grounds for impugning the practices or motives of public servants. We all value the grand jury too highly to permit it to be weakened either by bad practices or by groundless suspicions.

The court will allow ten days for the filing of supplemental or additional affidavits in support of the fourth ground for the pleas in abatement. If no additional or supplemental affidavits are filed in support of such charges, the motions to strike will be sustained.